IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 16, 2003

## STATE OF TENNESSEE v. JONATHAN M. LIGHT

**Direct Appeal from the Criminal Court for Sullivan County
No. S46,898     R. Jerry Beck, Judge**

---

**No. E2003-00688-CCA-R3-CD
March 1, 2004**

---

Defendant, Jonathan M. Light, pled guilty to two counts of Class D felony burglary, one count of Class D felony theft, and one count of Class E felony theft. Pursuant to the negotiated plea agreement, he received sentences of two years for each of the Class D felonies, and one year for the Class E felony, all to be served concurrently with each other for an effective sentence of two years. Pursuant to the agreement, the manner of service of the sentence was to be determined by the trial court following a sentencing hearing. Defendant requested to serve his sentence in the Community Corrections program, but the trial court ordered the entire sentence to be served by incarceration. Defendant has now appealed this decision by the trial court. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Stephen M. Wallace, District Public Defender; and Joseph F. Harrison, Assistant Public Defender, Blountville, Tennessee, for the appellant, Jonathan M. Light.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; B. Todd Martin, Assistant District Attorney General; Joseph Eugene Perrin, Assistant District Attorney General; and Rebecca H. Davenport, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In May, 2002, Defendant and his co-defendant burglarized two separate units in the same storage facility, and unlawfully took property from each storage unit. The value of property taken from one unit was in excess of $1,000.00, and the value of the property taken from the other unit was approximately $700.00.

Defendant was the only witness to testify at the sentencing hearing. At the time of the hearing, Defendant was twenty-two years old and a resident of Kingsport, living with his mother and two sisters, ages thirteen years and six years. He was not married and had no children. Defendant was a 1999 high school graduate and had four years of training in automobile body work and automobile mechanics. At the time of the sentencing hearing, he had been employed for two and one-half weeks, making $8.25 per hour, doing drywall and stucco work for a contractor. Defendant stated that he was in good health except for one of his shoulders, which popped out of socket occasionally due to a prior injury. Defendant admitted that he had first used alcohol at age fourteen, but testified that he did not use alcohol very much at the present time because he saw its effects on his parents, who were alcoholics. However, Defendant admitted that he was addicted to Oxycotin. He stated that after he injured his shoulder, he received prescriptions for Percocet and Lortab, but they did not adequately relieve his pain. Defendant began taking Oxycotin and became addicted. He admitted that he had never received a legal prescription for Oxycotin and purchased it "on the street."

Defendant admitted that he had an extensive prior criminal record, and blamed his prior record on his addiction to Oxycotin. The presentence report reflects that Defendant had convictions for eleven counts of misdemeanor theft for which he received a sentence of eleven months and twenty-nine days with all but 180 days suspended. In a different matter, he had an additional conviction for misdemeanor theft. He also had prior convictions for misdemeanor vandalism, attempted burglary of an automobile, and reckless driving. Just prior to pleading guilty to the charges which are the subject of this appeal, Defendant was also charged with driving on a suspended license and another misdemeanor theft charge. These charges were pending at the time the presentence report was prepared.

Defendant had admitted himself into a drug rehabilitation facility called Magnolia Ridge, but stayed for only one week. On direct examination, he testified that he left the facility because his girlfriend pressured him to leave. On cross-examination, he admitted that he was discharged from the facility for failure to follow rules. However, Defendant stated that he was immediately invited to return to the facility, but did not do so because of "pressure" from his girlfriend.

The presentence report reflects that the probation officer submitted three applicable enhancement factors, including the fact that Defendant was a leader in the commission of an offense involving two or more persons. Defendant contested the application of this enhancement factor and stated that he was at home, asleep, when "they" called and asked his mother to wake him up. He claimed that the burglaries were already in progress at that time. Defendant stated, "I was asleep at the time and they woke me up and made me come up there." In his testimony, Defendant conceded that he was not a suitable candidate for probation due to his prior criminal record. However, considering his drug addiction and all of the problems that it had caused, he asked the trial court to place him in the Community Corrections program.

The Community Corrections Act establishes a program of community-based alternatives to incarceration for certain eligible offenders. *See* Tenn. Code Ann. § 40-36-103. A defendant is

eligible for participation in a community corrections program if the defendant satisfies several minimum eligibility criteria set forth at Tennessee Code Annotated section 40-36-106(a)(1)(A)-(F) (2003). The Act does not provide that all offenders who meet these requirements are entitled to such relief. *State v. Grandberry*, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990). Indeed, Tennessee Code Annotated section 40-36-106(d) provides that the eligibility criteria shall be interpreted as minimum standards to guide the court's determination of eligibility of offenders under the Act.

"[A]n offender who does not meet the minimum criteria under Tennessee Code Annotated section 40-36-106(a) *and* is considered unfit for probation due to substance abuse or mental problems may still be eligible for community corrections under Tennessee Code Annotated section 40-36-106(c). *State v. Grigsby*, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997) (emphasis in original). However, before a defendant may be sentenced pursuant to Tennessee Code Annotated section 40-36-106(c), he or she must be found eligible for probation. *Grigsby*, 957 S.W.2d at 546; *State v. Staten*, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). The trial court must also find that: (1) the offender has a history of chronic alcohol abuse, drug abuse, or mental health problems; (2) these factors reasonably related and contributed to the offender's criminal conduct; (3) the identifiable special need(s) are treatable; and (4) the treatment could be best served in the community rather than a correctional institution. *Grigsby*, 957 S.W.2d at 546-47; *State v. Boston*, 938 S.W.2d 435, 439 (Tenn. Crim. App. 1996).

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *Grigsby*, 957 S.W.2d at 545.

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the § 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); *Boston*, 938 S.W.2d at 438. Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); *Boston*, 938 S.W.2d at 438. A trial court is in the best position to determine a defendant's amenability to community corrections because of its ability to observe the defendant's demeanor and characteristics first hand. *Grigsby*, 957 S.W.2d at 547.

In making its ruling, the trial court stated:

> The Defendant, in his own testimony, recognized he would not be a prime candidate for Probation, or regular Probation, but does urge the Court to place him in Community Corrections. His counsel, obviously, in asking questions, was referring to Community Corrections, Special Needs Provisions of Community Corrections.
>
> * * *
>
> Now, the Court first finds the Defendant is not eligible for Probation or Alternative Sentencing, regular Alternative Sentencing, based on his prior record. He has a terrible record, considering his age.
>
> The next issue is he - - should he be considered for Community Corrections, special needs provisions. Basically - - we have a residential Community Corrections Program here, and we do use Frontier Health to address a lot of drug abuse problems. But the problem is, he's previously entered a drug treatment program. He indicated he did not have the willpower to stay in it, after staying a few days, because his girlfriend didn't want him to. This does not exactly give the Court a lot of confidence that a program of rehabilitation, drug rehabilitation would be the least bit successful in the interest of the community or the Defendant.

Based upon the finding of the trial court that Defendant was a poor candidate for drug rehabilitation in Community Corrections, and on the fact that Defendant blamed others both for his criminal conduct in the cases involved in this appeal, and for his failure to remain in rehabilitative treatment on the prior occasion, we conclude that the trial court did not commit error by ordering Defendant to serve his entire sentence by incarceration. Accordingly, Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE